`UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALLAN J. SULLIVAN,

       Plaintiff,

  – against –

HAROLD RUVOLDT, an individual,
CATHY FLEMING, an individual, and
FLEMING RUVOLDT, PLLC a New York
Professional Limited Liability Company,

       Defendants.

**<u>OPINION AND ORDER</u>**

16 Civ. 583 (ER)

---

<u>Ramos, D.J.:</u>

   Allan J. Sullivan ("Sullivan" or "Plaintiff") brings this action against Harold Ruvoldt ("Ruvoldt"), Cathy Fleming ("Fleming") and Fleming Ruvoldt, PLLC (together, "Defendants"). Before the Court is Defendants' motion to dismiss on the grounds that (1) Sullivan is not a real party in interest and does not have standing to bring this action; (2) complete diversity of the parties does not exist; and (3) the Complaint fails to state a claim.

   For the following reasons, Defendants' motion is GRANTED.

I.      **Background**[1]

      **A. Factual Background**

In December 2013, Sullivan and Ruvoldt formed the law firm Sullivan Ruvoldt PLLC as a New York professional limited liability corporation.  First Am. Compl. ("FAC") at 10.  (Doc. 19).  Sullivan and Ruvoldt operated the firm pursuant to certain written and oral understandings. *Id.* at 11.  From December 3, 2013 to March 31, 2015, Sullivan and Ruvoldt each shared decision-making responsibility for the operations of the firm as equal partners, each owned 50% interest in the firm, each had an absolute and unreviewable right to veto any transaction, and each had a right to 50% of the profits.  *Id.* at ¶ 11.  Sullivan Ruvoldt PLLC maintained a TD Bank account (the "Sullivan Ruvoldt Account").  *Id.* at ¶ 21.  As of March 31, 2015, Sullivan Ruvoldt PLLC's net assets had an estimated value of over $400,000.  *Id.* at ¶ 19.

In March 2015, Sullivan informed Rudvoldt that he had accepted an executive-level legal position with the State of Vermont effective April 1, 2015.  *Id.* at ¶ 16.  On March 26, 2015 the two partners exchanged a total of seven emails regarding Sullivan's departure:

1. At 9:58 a.m., Rudvoldt emailed Sullivan that:  (1) Sullivan would need to "formally withdraw," (2) Sullivan's interest "will be set as assets minus liabilities at Midnight 3/31," (3) Ruvoldt will let Sullivan know "when receivables are collected and [Sullivan and Ruvoldt will] share all assets and liabilities, including receivables," (4) there are some liabilities that will not be known as of March 31, 2015, but will be shared if incurred before that date, and (5) Ruvoldt will "manage the wind down."  FAC Exhibit A; Second Supp. Sullivan Decl., Ex. 5 at 2.  At the end of the email, Ruvoldt stated that he "deeply personally regret[s] the loss of [Sullivan] as a partner" and requested that Sullivan "email back that this is agreeable."  *Id.*

2. Sullivan responded at 10:51 a.m., "[I] will need to have continued access to books and records as the accounts as of now are incomplete and I believe not

---

[1] The following facts are drawn from allegations contained in the First Amended Complaint (Doc. 19), which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

100% accurate.  [I] am assuming if [I] withdraw my name comes off?"  Second Supp. Sullivan Decl., Ex. 5 at 2.

3.   Ruvoldt wrote at 10:55 a.m., "Signatures come off but you will still have access. New accounts will be opened for new partnership[.]  What kind of errors[?]"  *Id.* at 1-2.

4.   Sullivan replied at 11:02 a.m., "[F]or example it said I had $40,000+ in distributions.  I think the number is for less, however that might account for someone's going into deposits. [I]t all needs to be looked at. [ ] I have no interest in delaying anything.  I just want to make sure everything is accurate.  [W]e are hindered by not having a complete set of books and records.  . . . [T]he records right now are incomplete."  *Id.* at 1.

5.   Ruvoldt stated at 11:09 a.m. that both Sullivan and Ruvoldt need to "update expenses etc.," and reminded Sullivan that "there [a]re many more expenses than submitted by either of us that should be accounted for going forward."  *Id.*

6.   At 11:36 a.m., Sullivan emailed on the same chain, "[I] was asking about use of my name for a spell.  [I] take it you are not interested in that now?  [I]f so, [I']ll need some hold harmless for that period, right?"  *Id.*

7.   Ruvoldt responded at 11:40 a.m., "We may need to use the name a few days.  I am working to try to minimize, to avoid any overlap.  But I may not be able to. Yes for any period your name after withdrawing is used you will be held harmless for any action taken or any liability thereafter incurred."  *Id.*

On or about April 1, 2015, Fleming Ruvoldt PLLC's website announced that the operation of Fleming Ruvoldt PLLC had commenced and that Sullivan had departed.  FAC at ¶ 20.  Fleming Ruvoldt PLLC opened separate bank accounts from the Sullivan Ruvoldt Account.  *Id.* at ¶ 21.

However, starting in April 2015, Defendants allegedly improperly commingled the funds of the former Sullivan Ruvoldt and new Fleming Ruvoldt firms, and took Sullivan's property without authority.  Ruvoldt directed TD Bank to remove Sullivan's signature authority and access to the Sullivan Ruvoldt Account.  *Id.* at ¶ 24.  Thereafter, Ruvoldt commingled certain funds from clients of Fleming Ruvoldt PLLC with the funds in the Sullivan Ruvoldt Account, and deposited $3,500 of his personal funds into the Sullivan Ruvoldt Account.  *Id.*  Ruvoldt paid those personal funds and commingled funds to a third party in New Jersey.  *Id.*  Defendants also

used funds from the Sullivan Ruvoldt Account to pay non-Sullivan Ruvoldt PLLC liabilities including Fleming Ruvoldt PLLC's operating expenses, and Ruvoldt's personal expenses. *Id.* at ¶¶ 22-23, 29. Ruvoldt also entered into a settlement with a third party regarding a Sullivan Ruvoldt PLLC receivable that was earned in 2014 without Sullivan's advance approval. *Id.* at ¶ 28. Plaintiff demanded that all unauthorized uses of Sullivan Ruvoldt's property cease, but Defendants have continued to use Plaintiff's funds. *Id.* at ¶¶ 25-27.

### B. Procedural History

On May 5, 2015, Plaintiff filed his initial complaint in the District Court for the Southern District of Florida against Ruvoldt and Sullivan Ruvoldt PLLC, noting that the firm is now known as Fleming Ruvoldt PLLC. (Doc. 1). On August 10, 2015, Plaintiff filed his First Amended Complaint ("FAC") naming Ruvoldt, Fleming and Fleming Ruvoldt PLLC. (Doc 19). On August 24, 2015, Defendants Ruvoldt and Fleming Ruvoldt PLLC moved to dismiss the FAC. (Doc. 21). On October 2, 2015, Defendant Fleming, acting *pro se*, also separately filed a motion to dismiss the FAC. (Doc. 61). Both motions were fully briefed and incorporated each other's motions. (Docs. 21, 53, 61, 65, 67, 72). On January 25, 2016, the District Court for the Southern District of Florida transferred the instant action to this Court on *forum non conveniens* grounds, and otherwise refrained from opining on the motions. (Doc. 83).

On June 29, 2016, Defendants filed a renewed motion to dismiss the FAC with prejudice, arguing that (1) Sullivan lacks standing because Allan J. Sullivan P.A. is the real party in interest, (2) there is no diversity because Allan J. Sullivan P.A. is still a member of the law firm, and (3) under New York law, which applies to the instant action, each of Sullivan's claims fail. (Doc. 112).

## II.        Legal Standard: Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) is the proper procedural vehicle for a motion to dismiss for lack of Article III standing rather than Rule 12(b)(6) because it concerns "the authority of a federal court to exercise jurisdiction."  *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n. 6 (2d Cir. 2006).  A motion to dismiss based on the lack of diversity should also be construed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  *See GMAC Mortg. Corp. of PA v. Weisman*, No. 95 CIV. 9869 (JFK), 1997 WL 83416, at *4 (S.D.N.Y. Feb. 27, 1997).  Thus, although Defendants brought their renewed motion to dismiss under Rule 12(b)(6), the Court will construe Defendants' motion to dismiss for lack of standing and lack of diversity jurisdiction under Rule 12(b)(1).[2]

"Dismissal for lack of subject matter jurisdiction is proper when the district court lacks the statutory or constitutional power to adjudicate a case."  *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013) (citation and internal quotation marks omitted).  In resolving a 12(b)(1) motion, a court may refer to evidence outside the pleadings such as affidavits.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

## III.        Discussion

### A.  Article III Standing

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'  That case-or-controversy requirement is satisfied only where a plaintiff has standing."  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273

---

[2] The Court also notes that Fleming had previously brought her first motion to dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6), and Ruvoldt and Fleming Ruvoldt PLLC had adopted her arguments and supporting documentation into their first motion.

(2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)).  "[I]n order to have Article III standing, a plaintiff must adequately establish:  (1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)."  *Id.* at 273-74 (internal quotation marks and alterations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "The party invoking federal jurisdiction bears the burden of establishing the[ ] elements" of Article III standing.  *Lujan*, 504 U.S. at 561.  Additionally, the Court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Thompson v. Cty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citation omitted).  If a party lacks Article III standing, a court has no subject matter jurisdiction to hear its claims.  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).  Thus, the question of standing must be resolved prior to deciding a case on the merits.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

Defendants argue that Sullivan lacks standing because Allan J. Sullivan, P.A. ("Sullivan P.A."), a Florida professional association, was the actual member of Sullivan Ruvoldt PLLC, not Sullivan in his individual capacity.  Renewed Mot. to Dismiss at 4-9.  If true, Sullivan would not have standing to assert an individual claim based on an injury to Sullivan P.A.  *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties");  *Baltus-Michaelson v. Credit*

*Suisse First Boston, LLC*, 116 F. App'x 308, 309 (2d Cir. 2004) ("It is well-settled that shareholders lack standing to assert individual claims based on injury to the corporation"). However, Sullivan asserts that he was an original member of Sullivan Ruvoldt PLLC in his individual capacity, and while he had intended to assign his membership interest to Sullivan P.A., that assignment never occurred.  Opp. to Renewed Mot. to Dismiss at 3-4; Sullivan Decl. at ¶ 11.  The Court finds that Sullivan has adequately met his burden to show that he has standing.

### 1.      Sullivan was one of the original members of Sullivan Ruvoldt PLLC

Sullivan's allegation that he was one of the original members that formed Sullivan Ruvoldt PLLC is supported by the record.  The articles of organization that had formed Sullivan Ruvoldt PLLC listed "Allan James Sullivan" as one of the two member-managers of the law firm.  Sullivan Decl. at Tab A.  Thus, unless Sullivan had thereafter assigned his membership interest to Sullivan P.A., Sullivan would have standing to bring this action.

### 2.      There was no full assignment of membership interest to Sullivan P.A.

Under New York law, a valid assignment "merely requires a completed transfer of the entire interest of the assignor that divests the assignor of all control over the right assigned." *Wells Fargo Bank Minn. v. Nassau Broad. Partners*, 2003 WL 22339299, at *5 (S.D.N.Y. Oct. 10, 2003); *cf United States v. Certain Funds on Deposit in Scudder Tax Free Inv. Account No. 2505103*, 998 F.2d 129, 132 (2d Cir. 1993) (assignment was invalid under New York law because "the assignor retained control over the things purportedly assigned and had [] power to revoke his instructions concerning the transfer"); *see also Aini v. Sun Taiyang Co.,* 964 F.Supp. 762, 778 (S.D.N.Y. 1997) (courts should look to substance and not form to determine whether there was a valid assignment under New York law; the ultimate question is the intent of the parties).  Additionally, if there is no operating agreement, or if the operating agreement does not

address certain topics, an LLC is bound by the default requirements in the New York Limited

Liability Company Law ("NYLLCL").  *In re Eight of Swords, LLC*, 96 A.D.3d 839, 839, 946

N.Y.S.2d 248, 249 (2012); *In re 1545 Ocean Ave., LLC*, 72 A.D.3d 121, 129, 893 N.Y.S.2d 590

(2010).

The parties do not allege that there is an operating agreement that addresses assignments,

and thus, the NYLLCL provisions on assignments apply.  NYLLCL§ 603 allows assignment of

all or part of a membership interest.  NY Limit Liab Co §  603(a)(1).  However, an assignment of

membership interest only entitles the assignee to "distributions and allocations of profits and

losses," and does not encompass "any rights or powers of a member."  NY Limit Liab Co §

603(a)(2)-(3).  Moreover, under NYLLCL, a member assignor only ceases to be a member if "*all*

of his or her membership interest*" is assigned, and an assignee cannot become a member

"*without* the vote or written consent of at least a majority in interest of the members, other than

the [assignor]."  NY Limit Liab Co §§ 603(a)(4), 604 (emphases added).

Defendants argue that there was a valid assignment because Sullivan represented, or

consented to the representation, in federal tax forms that Sullivan P.A. was the member of the

firm.  Specifically, that:  (1) the 2013 K-1 partnership tax form was issued to Sullivan P.A., not

Sullivan; (2) Sullivan P.A. was identified as the member in federal and state tax returns,

Sullivan's June 30, 2014 certification to the IRS, and a December 11, 2014 IRS certification; and

(3) Sullivan emailed the December 11, 2014 IRS certification to a foreign client for the purpose

of receiving payment.  Renewed Mot. to Dismiss at 5-8.  Though a tax return can constitute

evidence of an assignment, *BMM Four, LLC v. BMM Two, LLC*, 48 Misc. 3d 1201(A), 18

N.Y.S.3d 577 (N.Y. Sup. Ct. 2015) (holding that the transfer was recorded in written form when

the "tax return was completed and filed"), Sullivan has adequately shown that he never assigned

his whole membership interest to Sullivan P.A.  Sullivan states that his financial contributions to

Sullivan Ruvoldt PLLC of well over $150,000 in 2013-14 were provided in his personal

capacity, and that repayments of his contributions were only ever made to him personally, not to

Sullivan P.A.  Opp. to First Mot. to Dismiss at 13.  Sullivan also asserts that no structure was

established in which the firm's revenues would be paid to Sullivan P.A. as opposed to Sullivan in

his individual capacity.  Sullivan Decl. at ¶ 11.  Since at least some economic rights continued to

flow to Sullivan and he retained control of at least part of his membership interest, he remained a

member of Sullivan Ruvoldt LLC under NYLLCL § 603(a)(4).  Furthermore, under NYLLCL §

604, Sullivan's representations to third parties that Sullivan P.A. is the member is immaterial.

Sullivan P.A. can only become a member if there is a vote or a written consent amongst the

majority in interest of the members aside from the assignor, neither of which is alleged.  NY

Limit Liab Co § 604.  Thus, Sullivan P.A. was assigned, at most, a part of Sullivan's

membership interest and was never made a member.  Accordingly, the Court finds that Sullivan

is a real party in interest with standing to bring the instant action.

### B.  Diversity Jurisdiction

Sullivan has invoked subject matter jurisdiction in this Court on the basis of diversity of

citizenship.  FAC at ¶¶ 6-8.  The Court has diversity jurisdiction if (1) "the matter in controversy

exceeds the sum value of $75,000," 28 U.S.C. § 1332(a), and (2) there is "complete diversity, *i.e.*

all plaintiffs must be citizens of states diverse from those of all defendants." *Pennsylvania Pub.*

*Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir.), *as amended*

(Nov. 12, 2014) (internal quotations omitted).  Whether diversity jurisdiction exists is

"determined by examining the citizenship of the parties *at the time the action is commenced*."

*Reynolds v. Wohl*, 332 F. Supp. 2d 653, 656 (S.D.N.Y. 2004) (emphasis in original).  "[I]t is well

9

established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (citation omitted) (quotations omitted).  There is no dispute that the matter in controversy exceeds $75,000.

Sullivan argues that complete diversity exists because:  (1) he consensually withdrew from the firm effective March 31, 2015; (2) he was a citizen of Vermont when he filed the suit; (3) Fleming Ruvoldt PLLC is a New York PLLC with its principal office in New Jersey; and (4) both Fleming and Ruvoldt are citizens of New Jersey.  Opp. to Renewed Mot. to Dismiss at 2. Defendants argue that there is no diversity of citizenship in the instant action because either Sullivan P.A. or Sullivan[3] remains a member of Fleming Ruvoldt PLLC.[4]  For purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members. *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000).  Thus, if Sullivan remains a member of Fleming Ruvoldt PLLC, Fleming Ruvoldt PLLC would also be a Vermont citizen and diversity jurisdiction would be lacking.

Unless the operating agreement specifically provides for the right of withdrawal, a member cannot withdraw from an LLC prior to the dissolution of the LLC.  NY Limit Liab Co § 606(a).  Sullivan does not argue that there was a dissolution, but rather that there was an

---

[3] Defendants maintain that Sullivan P.A. was the member of the firm, not Sullivan, but argues that even if Sullivan was the member, there would be no diversity of citizenship.  Renewed Mot. to Dismiss at 10-11.

[4] Defendants also argue that Sullivan failed to affirmatively plead the parties' citizenship in the FAC as required. Renewed Mot. to Dismiss at 10.  However, the FAC states that Sullivan is a citizen of Vermont, Ruvoldt and Fleming are citizens of New Jersey, and Fleming Ruvoldt PLLC is formed under the laws of New York and maintains its principal place of business in New York or New Jersey.  FAC at ¶¶ 1-5.  Sullivan further alleges in his declaration that he was a member of the firm until his withdrawal on March 31, 2015.  Sullivan Decl. at ¶¶ 4, 14. *See Closter Golf Assocs. v. Exec. Mortg. Serv. Corp.*, No. 89 CIV. 0269 (CSH), 1990 WL 160902, at *1 (S.D.N.Y. Oct. 12, 1990) (permitting plaintiffs to address the issue of diversity of citizenship by an affidavit even though it was insufficiently pled in the amended complaint).

operating agreement that provided for his right of withdrawal.  Opp. to Renewed Mot. to Dismiss
at 9.  He claims that because NYLLCL § 102(u) defines "operating agreement" as "any written
agreement of the members concerning the business of a limited liability company and the
conduct of its affairs," the seven emails between Sullivan and Ruvoldt providing that Sullivan
would withdraw from the firm effective midnight March 31, 2015 constitutes an operating
agreement.  Opp. to First Mot. to Dismiss at 7-8; Opp. to Renewed Mot. to Dismiss at 5-8.

      Under NYLLCL, an operating agreement need not be titled as such and may pertain to
only one topic.  *Spires v. Casterline*, 4 Misc. 3d 428, 436, 778 N.Y.S.2d 259 (Sup. Ct. 2004)
(holding that the interim voting agreement is an operating agreement on voting issues).
Furthermore, under New York law, "[t]o establish the existence of an enforceable agreement, a
plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an
intent to be bound."  *Kolchins v. Evolution Markets, Inc.*, 128 A.D.3d 47, 59, 8 N.Y.S.3d 1 (N.Y.
App. Div. 2015).  "An exchange of emails may constitute an enforceable agreement if the
writings include all of the agreement's essential terms, including the fee, or other cost, involved."
*Kasowitz, Benson, Torres & Friedman, LLP v. Reade*, 98 A.D.3d 403, 404, 950 N.Y.S.2d 8
(2012), *aff'd*, 20 N.Y.3d 1082, 987 N.E.2d 631 (2013); *see also Brighton Inv., Ltd. v. Har-ZVI*,
88 A.D.3d 1220, 1222, 932 N.Y.S.2d 214, 216 (2011).  However, "a contract must be definite in
its material terms in order to be enforceable," and "an agreement to agree, where such terms are
left to future negotiations, is unenforceable."  *In re Estate of Wyman*, 128 A.D.3d 1157, 1158, 8
N.Y.S.3d 493 (N.Y. App. Div. 2015) (citations omitted).

      The seven emails between Sullivan and Ruvoldt do not show that there was an
acceptance of an offer, and indeed, establish that the terms of the withdrawal were not finalized.
Ruvoldt's initial email on March 26, 2015 at 9:58 a.m. stated *inter alia* that Sullivan would need

to "formally withdraw," that "[Sullivan's] interest will be set as assets minus liabilities at Midnight 3/31," and that Ruvoldt will "manage the wind down."  Second Supp. Sullivan Decl., Exhibit 5 at 2.  At the end of the email, Ruvoldt asked Sullivan to "email back that this is agreeable."  *Id.*; *see Kolchins*, 128 A.D.3d at 59 (holding that an offer was made via email when it extended to plaintiff the power to accept).  However, nowhere in the three emails subsequently sent by Sullivan was there an affirmative acceptance of Ruvoldt's "offer."

"[F]or an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal."  *King v. King*, 208 A.D.2d 1143, 1143–44, 617 N.Y.S.2d 593 (1994).  The emails do not show that Sullivan accepted the terms of Ruvoldt's offer in a clear, unambiguous and unequivocal manner.  Rather, Sullivan continued to negotiate certain terms for his withdrawal and noted that some items could not be determined with certainty because they were "incomplete" and "inaccurate."  In Sullivan's response on March 26, 2015 at 10:51 a.m., he requests "continued access to books and records as the accounts as of now are incomplete" and asks Ruvoldt, "[I] am assuming *if* [I] withdraw my name comes off?" without stating that he agreed with Ruvoldt's proposed terms.  Second Supp. Sullivan Decl., Exhibit 5 at 2 (emphasis added).  Sullivan's email sent at 11:02 further requests that his distributions "be looked at" and states that he "want[s] to make sure everything is accurate."  *Id.* at 1.  Lastly, in an email sent at 11:36 a.m., Sullivan again fails to expressly agree to formally withdraw according to the terms discussed in Ruvoldt's initial email and merely asks about whether Sullivan would need some hold harmless if his name is used for a period after his withdrawal. *Id.*  Considering Sullivan's three emails, there is no statement that unambiguously constitutes assent to Ruvoldt's proposal.  *See Sannon-Stamm Assocs., Inc. v. Keefe, Bruyette & Woods, Inc.*, 96 A.D.3d 630, 631, 947 N.Y.S.2d 466, 467 (2012) (holding that there was no binding

agreement because assent to proposed terms in plaintiff's email was not established in the record); *cf. Kolchins*, 128 A.D.3d at 59 (holding that the response "I accept please send the contract" was valid acceptance) (alterations omitted); *Kasowitz, Benson, Torres & Friedman, LLP*, 98 A.D.3d at 405 (holding that an email proposing a fee arrangement, an email asking to have the arrangement "in place" and the email response, "Go," constitute an integrated agreement). Sullivan argues that the parties' conduct after March 31, 2015 shows that Sullivan was no longer a member of the firm. Opp. to Renewed Mot. to Dismiss at 8-9. However, in the absence of some other *written* agreement providing for Sullivan's withdrawal, NYLLCL does not allow Sullivan to withdraw from the firm prior to dissolution. The Court finds that Sullivan remains a member of Fleming Ruvoldt PLLC, and thus, there is no complete diversity among the parties.

Since Sullivan has failed to adequately plead diversity jurisdiction, this Court need not reach which State's law applies to the action, and whether Sullivan has sufficiently alleged his claims under the applicable law.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED and Plaintiff's action is dismissed.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 112, and close the case.

It is SO ORDERED.

Dated:    March 24, 2017
          New York, New York

                                                    Edgardo Ramos, U.S.D.J.

13